¶ 87 I concur with the majority's disposition and analysis, with one exception. The majority finds that R.C. 4931.49(A) clearly is applicable with respect to the training given to Ms. Ellington as such falls within the development of the 9-1-1 system. Thus, the majority concludes that the issue of whether training or manual contents fell within the sphere of negligence is immaterial because R.C. 4931.49(A) requires wanton and/or willful misconduct. However, I would find that R.C. 4931.49(A) is inapplicable to the training or manual contents. Therefore, I respectfully dissent from that portion of the majority's opinion.
 {¶ 88} Revised Code 4931.49(A) states that: "[t]he state, the state highway patrol, or a subdivision participating in a 9-1-1 system and any officer, agent, or employee of the state, state highway patrol, or a participating subdivision is not liable in damages in a civil action for injuries, death, or loss to persons or property arising from any act or omission, except willful or wanton misconduct, in connection with developing, adopting, or approving any final plan or any agreement made under section 4931.48 of the Revised Code or otherwise bringing into operation a 9-1-1 system pursuant to those provisions."
 {¶ 89} The majority finds that the training of Ms. Ellington falls within the development of the 9-1-1 system. However, R.C. 4931.49(A) refers to the development of a final plan or agreement pursuant to R.C.4931.48. A review of R.C. 4931.43(B) which specifies what shall be in a final plan demonstrates that the term "final plan" refers to the creation of the 9-1-1 system and does not reach the training of the personnel who will man the 9-1-1 system.
 {¶ 90} Pursuant to R.C. 4931.43(B), a final plan shall specify the following:
 {¶ 91} "(1) Which telephone companies serving customers in the county will participate in the 9-1-1 system;
 {¶ 92} "(2) The location and number of public safety answering points; how they will be connected to a company's telephone network; from what geographic territory each will receive 9-1-1 calls; whether basic or enhanced 9-1-1 service will be provided within such territory; what subdivisions will be served by the answering point; and whether an answering point will respond to calls by directly dispatching an emergency service provider, by relaying a message to the appropriate provider, or by transferring the call to the appropriate provider;
 {¶ 93} "(3) What subdivision will establish, equip, furnish, operate, and maintain each public safety answering point;
 {¶ 94} "(4) A projection of the initial cost of establishing, equipping, and furnishing and of the annual cost of the first five years of operating and maintaining each public safety answering point;
 {¶ 95} "(5) Whether the cost of establishing, equipping, furnishing, operating, or maintaining each public safety answering point should be funded through charges imposed under section 4931.51 of the Revised Code or will be allocated among the subdivisions served by the answering point and, if any such cost is to be allocated, the formula for so allocating it;
 {¶ 96} "(6) How each emergency service provider will respond to a misdirected call."
 {¶ 97} Thus, a final plan does not reach the level of actually establishing training requirements or procedures for the persons manning the systems.
 {¶ 98} Likewise, the agreements referred to in R.C. 4931.48 and4931.49 do not concern the training or manual contents. Revised Code4931.48 addresses when a municipal corporation or township may establish its own 9-1-1 system.
 {¶ 99} Therefore, I would hold that R.C. 4931.49(B) is inapplicable to the issues relating to training and manual contents. I would reverse and remand the issues of training or manual contents for consideration of whether the facts found warrant the applicability of R.C. 2744.02(B)(4).
 {¶ 100} I concur with the majority as to the analysis and disposition of all other issues.
Judge Julie A. Edwards, J.